IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2025

## STATE OF TENNESSEE v. OMERRIEAL DYWANE WOODS

**Appeal from the Criminal Court for Hamilton County**
**No. 315078   Boyd M. Patterson, Judge**

_____

### No. E2024-00999-CCA-R3-CD

_____

The defendant, Omerrieal Dywane Woods, was convicted by a Hamilton County Criminal Court jury of one count of facilitation of reckless homicide, two counts of facilitation of attempted aggravated assault, and one count of possession of a firearm with the intent to go armed.   The defendant was sentenced to an effective six years in the Department of Correction.  On appeal, the defendant argues that the evidence is insufficient to sustain his conviction.  After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and MATTHEW J. WILSON, JJ., joined.

M. Todd Ridley, Franklin, Tennessee, (on appeal) and Jonathan Wilson, Chattanooga, Tennessee, (at trial) for the appellant, Omerrieal Dywane Woods.

Jonathan Skrmetti, Attorney General and Reporter; Katherin C. Redding, Senior Assistant Attorney General; Johnny Cerisano, Assistant Attorney General; Coty Wamp, District Attorney General; and Addie Nester, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The defendant and two co-defendants, Toddie Woods and Hyacinth Taylor, were indicted for numerous charges arising out of a shooting on the evening of July 14, 2019,

that resulted in the death of Rigoberto Jarquin and in the injury of Jose Garcia-Lopez and Miguel Pimente. The State severed the two co-defendants and proceeded to trial against the defendant.

On the evening of July 14, 2019, Miguel Pimente traveled from Dalton, Georgia, to Chattanooga, Tennessee, to visit a friend who resided at the Douglas Heights apartment complex. Together, they went to a local club and later returned to the apartment complex with mutual friends, including Jose Garcia-Lopez, to continue socializing near the complex's pool. Shortly after arriving at the apartment complex, a second group of people, including the defendant and his brother, Toddie Woods, arrived and interacted with Mr. Pimente and his group of friends. During their interactions, Toddie Woods began to make the women feel uncomfortable by saying "perverted things." Therefore, Mr. Pimente's group attempted to end the interaction with Toddie Woods but were unsuccessful. Offended by the fact that Mr. Pimente's group tried to end their interaction with him, Toddie Woods became verbally aggressive, causing Mr. Pimente, Mr. Garcia-Lopez, and their friends to leave the pool area and withdraw to their friend's apartment on the second floor. Mr. Garcia-Lopez testified that as he and a few of their friends entered the elevator to make their way to the second floor, the defendant's group attempted to join them. Because they no longer wished to interact with the defendant's group, Mr. Garcia-Lopez's group closed the door of the elevator before the defendant's group was able to enter.

When they arrived at the apartment, Mr. Garcia-Lopez and his friends could not initially enter and waited in the hallway. While they waited, the defendant's group approached, indicating they intended to enter the apartment as well. To evade the defendant's group and prevent them from entering, Mr. Garcia-Lopez and his friends forced their way into the apartment.

After Mr. Garcia-Lopez and his friends entered the apartment but before they could close the door, an altercation occurred between those inside the apartment and the defendant's group who were trying to force their way into the apartment. Mr. Pimente, having left the pool area earlier than Mr. Garcia-Lopez, testified that he was inside the apartment for several minutes before he noticed a commotion at the front door. He saw several people struggle to keep the door of the apartment closed. Mr. Garcia-Lopez testified that he and his friends slammed against the door to close it and that the defendant's group repeatedly kicked it open. Even after they finally closed and deadbolted the door, the defendant's group continued to kick at the door, swinging it open. Mr. Garcia-Lopez testified, "me and the group of guys that I'm with are doing everything that we can to keep [the door] closed." Finally, to barricade the apartment door closed and keep it closed, they moved a chair in front of the doorknob.

Once the door was barricaded, the defendant's group ceased kicking. Mr. Garcia-Lopez, believing he was safe, moved a few steps away from the door. He stated at trial, "[t]he next thing I know, I – my body hits the ground. My ears are ringing." When he was able to sit up, Mr. Garcia-Lopez saw that Rigoberto Jarquin had been shot and was lying on the floor. He then realized he too had been shot based on the pool of blood running down the left side of his body and the pain in his shoulder.

Mr. Pimente, who was standing further inside the apartment during the struggle, testified that once the door was locked, "[e]verything was back to normal," and he turned back to the party. He then heard several gun shots and turned to flee. Feeling soreness in his leg and seeing blood, he realized he had been shot. Despite the gunshot wounds, Mr. Pimente moved to the balcony at the back of the apartment, stepped over Rigoberto Jarquin's body, and jumped over the railing.

Kendra Randolph with the Chattanooga Police Department (CPD) crime scene unit processed the scene of the shooting, which included taking photographs and collecting evidence. Officer Randolph recovered fifteen shell casings and nine bullet projectiles from the scene.

Agent Denver Hall with the Tennessee Bureau of Investigation analyzed the shell casings and projectiles recovered from the scene. Agent Hall determined that the casings and the projectiles all came from the same .40 caliber gun.

CPD Detective Jason Gunn reviewed the video footage from the surveillance cameras at the Douglas Heights apartment complex and identified the defendant, as well as Toddie Woods and Hyacinth Taylor as suspects. Det. Gunn testified that the video footage showed that after Mr. Garcia-Lopez and his group of friends left the elevator, they walked from the direction of the elevator to the apartment door. After the group waited at the door for approximately a minute, the defendant and his group walked from the same direction towards Mr. Garcia-Lopez's group. Mr. Garcia-Lopez's group can then be seen forcing their way into the apartment. Once Mr. Garcia-Lopez's group was inside, the door appeared to close before anyone in the defendant's group could enter.

The video footage showed the immediate struggle that ensued at the door of the apartment during which the defendant and his group beat and kicked the door attempting to gain entrance. After approximately one minute, the group outside the apartment began to disband. Hyacinth Taylor left the area in front of the apartment door and walked towards the elevator at the end of the hallway. The defendant, however, remained by his brother, Toddie Woods, as he continued to kick and beat the apartment door.

Seconds later, the defendant made an indistinct hand gesture towards the elevator end of the hallway and walked in that direction. While walking towards the elevator, the defendant encountered Hyacinth Taylor, who handed the defendant a firearm. The defendant took possession of the firearm and placed it in his pants. The remaining members of defendant's group stopped kicking the apartment door and walked towards the elevator. As they walked, the defendant calmly handed the firearm to Toddie Woods, who immediately turned and ran back towards the apartment. The defendant then looked at Toddie Woods and made a flicking hand gesture towards the apartment. As the defendant exited the hallway, Toddie Woods fired fifteen rounds into the apartment door.

Medical Examiner Dr. Steven Cogswell conducted the autopsy on Rigoberto Jarquin. The autopsy revealed the victim sustained four gunshot wounds – two to his chest wall, one to his left arm, and one to his hand. Dr. Cogswell concluded that the cause of death was multiple gunshot wounds and manner of death was homicide.

Following the conclusion of proof, the jury convicted the defendant of the lesser-included offenses of facilitation of reckless homicide, two counts of facilitation of attempted aggravated assault, and possession of a firearm with intent to go armed, and after a sentencing hearing, the trial court imposed an effective sentence of six years' confinement. This timely appeal followed.

*Analysis*

On appeal, the defendant argues that the evidence is insufficient to sustain his convictions for facilitation of reckless homicide and facilitation of attempted aggravated assault. Specifically, the defendant argues that the evidence is insufficient to sustain his convictions because the State did not establish that he knew of his brother's intent to commit reckless homicide or attempted aggravated assault when he handed him the firearm. The State asserts that, although it did not provide direct evidence of the defendant's knowledge at the time he handed his brother the weapon, there was sufficient evidence for the jury to infer the defendant knew his brother's intent. We agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions

involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *See id.* at 379. Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.* This Court will not exchange its "inferences for those drawn by the trier of fact from circumstantial evidence." *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

## I.    Facilitation of Reckless Homicide

Here, the defendant was charged with facilitation of second-degree murder; however, the jury returned a verdict of guilty on the lesser-included offense of facilitation of reckless homicide. Reckless homicide is "a reckless killing of another." Tenn. Code Ann. § 39-13-215(a). "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403. A person

> acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

*Id.* § 39-11-106(a)(23), -302(b). A person who "facilitates" the felonious conduct of another "knowingly furnishes substantial assistance," but "lacks the intent to promote or assist in, or benefit from, the felony's commission." *Id.* § 39-11-403(a), Sentencing Comm'n Cmts. In short, "the State [is] required to prove the commission of a specified felony and the assistance the [defendant] gave to the person committing the specified felony." *State v. Dych*, 227 S.W.3d 21, 40 (Tenn. Crim. App. 2006). Specifically, facilitation of reckless homicide requires proof that: (1) A reckless homicide was committed; (2) The defendant knew that another person intended to commit the specific felony, but he did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense; and (3) The defendant knowingly furnished substantial assistance to that person in the commission of the specific felony. *See State v. Harris*, No. E2016-01952-CCA-R3-CD, 2017 WL 6205782, *11-12 (Tenn. Crim. App. Dec. 7, 2017), *perm. app. denied* (April 19, 2018).

On appeal, the defendant does not challenge that he "furnished substantial assistance" to Toddie Woods when he provided the firearm, but instead, contends that there was insufficient evidence that he "knew" Toddie Woods intended to shoot into the apartment. However, when viewed in the light most favorable to the State, there was sufficient evidence from which a rational trier of fact could find that the defendant knew Toddie Woods would recklessly discharge the firearm towards the occupants of the apartment. Mr. Garcia-Lopez testified that the defendant's group aggressively followed him from the pool area of the complex to the apartment, attempted to enter the elevator with him, and violently attempted to enter the apartment. The State also introduced video footage that showed the defendant witness Toddie Woods' violent attack on the apartment,

calmly procure the firearm from Hyacinth Taylor, and then provide that firearm to Toddie Woods. Further, the defendant's hand gesture towards the apartment door could be interpreted by a reasonable juror as a directive to Toddie Woods to fire the weapon at the apartment.

From this evidence, a reasonable juror could infer that by watching Toddie Woods' behavior intensify through the night and culminate in a violent attack upon the apartment, the defendant would have known that when he handed Toddie Woods a firearm and motioned him towards the apartment door that Toddie Woods intended to commit further violence and would recklessly discharge the firearm. Therefore, the evidence is sufficient to support his conviction.

## II.      Facilitation of Attempted Aggravated Assault

The elements of facilitation listed above also apply to facilitation of attempted aggravated assault. As applicable in this case, a person commits aggravated assault who "intentionally or knowingly commits an assault as defined in § 39-13-101[1], and the assault: (i) results in serious bodily injury to another." Tenn. Code Ann. § 39-13-102(a)(1)(A)(i). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). "It is no defense to prosecution for criminal attempt that the offense attempted was actually committed." Tenn. Code Ann. § 39-12-101(c).

As above, the defendant's contention on appeal is that the State failed to provide direct proof of the defendant's knowledge that Toddie Woods intended to commit attempted aggravated assault. Based upon the same evidence enumerated above when viewed in the light most favorable to the State, there was sufficient evidence from which a rational trier of fact could find that the defendant knew Toddie Woods intended to deploy the firearm in an attempt to assault the victims within the apartment and the assault resulted in serious bodily injury. A reasonable juror could have inferred from the defendant's knowledge of Toddie Woods' behavior that evening, that when he handed him a firearm and motioned him towards the apartment, the defendant knew Toddie Woods intended to commit an assault upon the people inside the apartment utilizing that firearm and causing serious bodily harm. Therefore, the evidence is sufficient, and the defendant is not entitled to relief.

---

[1] A person commits assault as defined in Tennessee Code Annotated § 39-13-101 who intentionally, knowingly, or recklessly causes bodily injury to another. Tenn. Code Ann. § 39-13-101(a)(1).

## CONCLUSION

Based on the authorities and reasoning, we affirm the judgments of the trial court.

s/ J. Ross Dyer
J. ROSS DYER, JUDGE